UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO.: 1:19-cv-23666

ASHLEY JOHNSON,
    Plaintiff,
vs.

SONNY PERDUE, SECRETARY,
DEPARTMENT OF AGRICULTURE,
    Defendant.
_____/

# COMPLAINT
### (Jury Demand)

This is an action to enforce the provisions of Tittle VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"). Plaintiff ASHLEY JOHNSON ("Johnson") sues the U.S. DEPARTMENT of AGRICULTURE ("USDA") to vindicate her constitutional and statutory rights. Johnson alleges that the USDA discriminated against her based on her race, color and sex, and harassed and retaliated against her by denying the privileges, terms, and conditions of employment afforded to other employees.

## Jurisdiction and Venue

1. This Court has original jurisdiction over this action according to 42 U.S.C. § 2000e-5(f) and 28 U.S.C. § 1345.

2. Venue is proper in this judicial district under 42 U.S.C. § 2000e-S(f)(3) and 28 U.S.C. § 1391 (b) because it is where a substantial part of the events or omissions giving rise to the cause of action herein occurred.

## Parties

3. Johnson is an African American female, resident of Broward County, Florida. For the

last 15 years, Johnson has worked as a career employee of the USDA's Agricultural Research Service ("ARS"), Subtropical Horticultural Research Station in Miami, Florida ("SHRS").

4. The USDA's responding management officials ("RMOs") involved in this complaint include ARS's Administrators, Dr. Chavonda Jacobs-Young ("Jacobs-Young"); Southeast Area Director, Mr. Archie Tucker ("Tucker"); Labor Relations Officer, Kathleen Hall ("Hall"); Personnel and Labor Solutions ("PALS") supervisor, Hillary Clark ("Clark"); Director of Human Resources, Diane McFadgen; and SHRS supervisors, Dr. Hamed Abbas ("Abbas"), Dr. Ricardo Goenaga ("Goenaga") and Dr. Osman Gutierrez ("Gutierrez").

## Procedural Background

5. On March 17, 2017, Johnson filed formal EEO complaint (ARS-2017-00318), alleging discrimination based on sex (female), race (African American), and color (black).

6. On September 28, 2017, Johnson filed a second formal EEO complaint (ARS-2017-00964), alleging discrimination and harassment (nonsexual) on the bases of race (African American), color (black), sex (female), and retaliation for prior Equal Employment Opportunity ("EEO") activity.

7. On July 19, 2017 and May 30, 2018, Johnson requested a hearing on both complaints with the EEO Commission in Miami, FL.

8. On April 25, 2019, the Administrative Law Judge (AJ), remanded both complaint for a Final Agency Decision ("FAD").

9. Plaintiff received the FAD on Jun 3, 2019. According to the FAD "the weight of the evidence indicates neither discrimination, nor harassment occurred with respect to the issues in this complaint." (Exhibit A).

**Facts**

*The Subtropical Horticultural Research Station*

10. The SHRS is located at 13601 Old Cutler Rd., Miami, FL 33158. This location is surrounded by residential homes comprising the Palmetto Bay area.

11. The main purpose of SHRS is to research chocolate, and generate publications in plants and insects.

12. For the past 8 years Jacobs-Young's failure to appoint a permanent Research Leader ("RL"), or a director of the SHRS, has generated an influx of "acting" RLs who spend on average a year at the SHRS and later return to their original workplace.

13. The lack of leadership has resulted in a barrage of negative consequences. In 2015 and 2016, SHRS obtained dismal scores in the Office of Personnel Management, Federal Viewpoint Survey ("FEVS"). For example, in 2016 only 35% of SHRS' employees agreed their senior leaders maintain a high standards of honesty and integrity. And only 26% agreed that senior leaders generate high levels of motivation and commitment in the workforce.

14. In 2018 and 2019, SHRS was placed on the closure list of locations by the President's Budget Agricultural Research Service. This dubious honor responds to, among others, SHRS's "relatively low impact [research], significance, or relevance to national priorities."

15. The lack of leadership and high turnover in the past years are also reflected in the infrastructure and unsanitary conditions at the SHRS. For years there has been a substantial amount of mold and water condensation behind the walls of its main building, this is where most of all the purported research is conducted. Other buildings in the location are abandoned, partially destroyed or at the mercy of the inclement. Plant or "germplasm" collections are diseased or simply no longer existent. Yet, other than patching the problem, nothing is done.

This impromptu approach to essential matters is the result of years of no accountability or oversight by the USDA.

16.  Employee's safety is clearly not in the list of priorities. Despite having a yearly budget in the millions of dollars, including rent collected from federal and state tenants, the SHRS avail itself of employees that are not qualified or licensed to perform the necessary maintenance or repairs. These employees are rewarded for their services with special treatment or overtime.

***The 2016 Engineering Assessment***

17.  Relevant to this complaint is the unsafe and unsanitary conditions of Building 55.

18. In October 27, 2016, the USDA commissioned Johnson Mc. Adams, P.A. to perform an assessment called "Building 55, 55A, 55B Structural and Electrical Condition Assessment" (the "Engineering Assessment").

19. The purpose of the Engineering Assessment, was to determine modifications that could bring Building 55 in compliance with code, perform an electrical system assessment and provide recommendations.

20. The Engineering Assessment found among others:

   a. that Building 55 was not designed to comply with the wind load requirements of the current Florida Building Code;

   b. that the structural components of the greenhouses are deteriorating and have weakened their structural integrity;

   c. and that the electrical deficiencies and non-code compliance issues of the existing system is a life safety issue specially during times of high wind velocities.

21. The Engineering Assessment ultimately recommended that the greenhouses in

Building 55 be replaced. Regarding the electrical system, it recommended that it be completely replaced to comply with codes.

22. To forgo the recommendations in the assessment, in January 2017, Gutierrez and Dr. Alan Meerow formed and participated in a "Facility Oversight Committee".

23. The Facility Oversight Committee recommended no immediate action to be taken regarding Building 55 despite being aware of the assessment and the dangers that Building 55 posed to employees and the general public.

24. As of the date, the conditions of Building 55 remain unchanged.

***The Delayed Promotion***

25.  Johnson was hired in by the USDA as a Biological Science Technician, GS-0404, approximately on 2004.

26. Johnson's position was under a career ladder promotion.

27. The controlling statute for a career ladder promotion is 5 C.F.R. § 335.104 which states that:

> "No employee shall receive a career ladder promotion unless his or her current rating of record under part 430 of this chapter is "Fully Successful" (level 3) or higher. In addition, no employee may receive a career ladder promotion who has a rating below "Fully Successful" on a critical element that is also critical to performance at the next higher grade of the career ladder."

28. By 2016, Johnson had been in her current paygrade for a year. In October 2016, Johnson obtained a rating of "outstanding" or 2 levels above "fully successful."  Accordingly, she was eligible for a promotion to the next paygrade.

29. On November 2, 2016, Gutierrez recommended that Johnson be promoted to a GS-9.

30. Following Gutierrez's recommendation, Johnson received notice from Abbas that she needed to contact Labor Relations Officer Kathleen Hall regarding her promotion.

31. On December 21, 2016, Johnson was informed by Abbas that her promotion was delayed because it required a "stronger" justification from Gutierrez. Johnson was also informed that the folder containing all the paperwork related to her promotion was lost.

32. On February 5, 2017, Johnson was informed that her promotion was processed.

33. Subsequently Johnson was informed by Abbas that her promotion did not go through.

34. On or about March 27, 2017, while answering questions about Johnson's promotion, Abbas continually laughed and asked her if she was joking about her promotion.

35. On April 2017, Johnson was finally promoted to GS-9.

36. Johnson's promotion took approximately four months.

37. As a result of the unjustified delay in promoting Johnson and the lack of reasonable explanation, on January 13, 2017, she contacted an EEO counselor to file a complaint alleging discrimination based on sex, color and race.

### The Immediate Retaliation

38. On September 20, 2017 and following Johnson's discrimination complaint, Gutierrez instructed Johnson to work in Building 55.

39. On or about September 20, 2017, and ongoing, Gutierrez also denied Johnson's situational telework requests.

40. On November 2, 2017, Gutierrez issued Johnson her 2016- 2017 performance appraisal lowering her previous rating from "outstanding" to "superior."

41. On November 14, 2017, Gutierrez informed Johnson that her performance plan was changed.

42. On November 15, 2017, Johnson requested from Gutierrez clarification regarding

the changes he made to her performance plan. According to Gutierrez the decision to change her performance plan was taken during a group discussion about assignment of responsibilities.

43. As a result of Gutierrez retaliatory actions, on September 28, 2017, Johnson contacted an EEO counselor to file a complaint alleging discrimination, harassment and retaliation based on prior EEO activity.

## COUNT I
## Discrimination Based on Sex, Color and Race

44. Johnson re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs above.

45. On December 21, 2017, Abbas following the instructions of Hall and Clark requested that Gutierrez provided a "stronger" justification to justify Johnson's promotion.

46. Abbas, Clark and Hall knew that the controlling regulation does not require a justification to be promoted, much less a "stronger" justification to promote Johnson or any other employee.

47. Abbas, Clark and Hall also knew that other similar situated employees were not required to write any justification whatsoever to be promoted.

48. This requirement was a pretext to delay Johnson's promotion in order to discourage her from obtaining a well-deserved promotion.

## COUNT II
## Retaliation for Engaging in Prior EEO Activity

49. Johnson re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs above.

50. Johnson engaged in a protected activity when she filed a discrimination complaint

against the USDA on January 13, 2017.

51. In retaliation for filing a discrimination complaint, Gutierrez assigned her to work in Building 55, a building that Gutierrez and most of the employees were aware of its dangerous conditions.

52.  Not conformed with exposing Johnson to the dangerous conditions of Building 55, Gutierrez also lowered Johnson's performance appraisal, denied her situational telework, discussed her previous complaint before her co-workers, unilaterally changed her performance plain and refused to provide any explanation when it was requested.

53. This action was taken by Gutierrez and other advising him in retaliation for Johnson's protected activity and to discourage her from pursuing her previous discrimination complaint.

54. There was a causal connection between Johnson's complaints and the materially adverse actions taken against her.

55. The retaliation endured by Johnson would dissuade a reasonable employee from making complaints of discrimination and harassment.

## COUNT III
### Failure to Maintain Environment Free from Harassment

56.  Johnson re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs above.

57.  Since 2014, Jacobs-Young has been aware of the numerous personnel problems at SHRS including the results of the FEVS.

58.  Tucker on his part refuses to act or order those under his direct supervision to act regarding the safety conditions and recommendations in the Engineering Assessment.

59. Tucker is also aware that there are unqualified employees performing maintenance

and electrical work at SHRS. He is also aware that employees under his supervision and the general public are exposed to the dangerous and unsanitary conditions at SHRS.

60. Jacobs-Young and Tucker's failure to lead and general apathy regarding the ongoing problems at SHRS, has signaled supervisors that discrimination, harassment and retaliation is the norm and not the exception.

61. At all relevant times, McFaden, Clark and Hall acted as enablers to Abbas and Goenaga, and directly or indirectly instructed Gutierrez to delay Johnson's promotion, discuss her complaints of discrimination before her co-workers and discourage her from taking the necessary actions to redress the USDA's violations of her civil.

62. The actions or inactions of the above-named individuals contribute and encourage the harassment Johnson has experienced.

## **PRAYER FOR RELIEF**

WHEREFORE, Johnson prays that the Court grant her the following relief:

(a) Enjoin the USDA from:

    (i) subjecting Johnson to discrimination and harassment; and (ii) retaliating against her for engaging in activity protected under Title VII;

(b) order the USDA to once and for all develop and implement appropriate and effective measures designed to prevent discrimination, harassment, and retaliation, including but not limited to policies and training for employees and managers;

(c) award compensatory damages to Johnson and fully compensate her for the injuries caused by USDA's discriminatory, harassing, and retaliatory conduct, according to and

within the statutory limitations of Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981 and;

(d) Award such additional relief as justice may require, together with attorney's fees and costs.

## JURY DEMAND

Johnson hereby demands a trial by jury of all issues so triable.

Submitted on August 31, 2019 by:

/s/ Joey D. Gonzalez
Joey D. Gonzalez
Fla. Bar #: 127554
JOEY GONZALEZ, ATTORNEY, P.A.
P.O. Box 145073
Coral Gables, FL 33114-5073
305-720-3114[tel]
joey@joeygonzalezlaw.com
Attorney for Ashley Johnson